Filed 11/15/21  P. v. Andrade CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN CARLOS ANDRADE,<br><br>    Defendant and Appellant. | B310303<br><br>(Los Angeles County<br>Super. Ct. No. PA070040-01) |

APPEAL from an order of the Superior Court of Los Angeles County, Hayden Zacky, Judge.  Reversed and remanded.

Elizabeth K. Horowitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan-Pithey, Senior

Assistant Attorney General, Amanda V. Lopez and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury in 2013 convicted Juan Carlos Andrade and three fellow gang members of first degree murder, attempted willful, deliberate and premeditated murder, shooting at an inhabited dwelling and several related felonies. On appeal this court reversed the first degree murder convictions of all four defendants for *Chiu* error (*People v. Chiu* (2015) 59 Cal.4th 155 (*Chiu*)), holding, in part, nothing in the record demonstrated beyond a reasonable doubt the jury had based its verdict on a finding that a particular defendant had been the actual killer and others had directly aided and abetted him, rather than that each defendant was guilty of first degree murder under the natural and probable consequences doctrine. (*People v. Gomez* (Jun. 23, 2015, B251303) [nonpub. opn.].) On remand the People elected not to retry Andrade for first degree murder, accepting a reduction to second degree murder with all associated enhancements found true by the jury.

In November 2020 Andrade filed a petition for resentencing under Penal Code section 1170.95.[1] The superior court, without first appointing counsel or inviting briefing and "acting as independent factfinder," summarily denied the petition, finding that Andrade "could presently be convicted of murder under a theory of express or implied malice, whether he was the actual killer or if he aided and abetted the killer." Andrade contends, and the Attorney General concedes, the superior court erred by

_____

[1]     Statutory references are to this code.

failing to appoint counsel and prematurely engaging in factfinding before issuing an order to show cause and conducting an evidentiary hearing.  We agree, reverse the order denying Andrade's petition and remand with directions to appoint counsel for Andrade, issue an order to show cause and conduct further proceedings in accordance with section 1170.95, subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Andrade's Murder Conviction, Appeal and Sentencing on Remand*

   a. *The trial*

Our opinion in *People v. Gomez, supra*, B251303, describes in detail the evidence presented at trial and the jury's verdict.

Andrade, Jovani Gomez, Kevin Alvarenga and Leonardo Garcia were charged in an information with murder (§ 187, subd. (a)) (count 1), attempted willful, deliberate and premeditated murder (§§ 187, subd. (a), 664) (count 2), two counts of shooting at an inhabited dwelling (§ 246) (counts 3 and 4), discharge of a firearm with gross negligence (§ 246.3, subd. (a)) (count 7) and street terrorism (§ 186.22, subd. (a)) (count 8).  It was specially alleged the offenses had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)) and as to counts 1 through 4 that each of the defendants had personally used and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (b), (c), (d)) and/or a principal had personally used and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (e)(1)).

According to the evidence at trial, German Chairez and Leonel Serrano were members of Columbus Street, a criminal street gang.  Andrade, Gomez, Alvarenga and Garcia were members of the Vincent Town criminal street gang, a rival of

3

Columbus Street's. On November 19, 2010 Chairez and Serrano were visiting a friend at an apartment complex in the North Hills section of the San Fernando Valley. As they walked down the stairs on their way out of the complex, Serrano heard someone shout "Fuck Columbus!" and saw two men shooting at him and Chairez. Serrano and Chairez immediately turned around and raced back up the stairs as shots continued to be fired. Both men were hit in the back. Chairez died from a bullet that perforated his lung. Serrano survived.

Salvador Ortiz was in the area of the apartment complex on the night of the shooting and encountered Andrade, Garcia and Gomez, known to him by their gang monikers, "Happy," "Baby" and "Clever," respectively. Ortiz noticed Andrade and Garcia were armed.[2] One man had a semiautomatic weapon; the other a revolver. Their conversation was friendly because Ortiz, a member of the Barrio Van Nuys gang, was not a rival. Within a few minutes of talking to them, Ortiz heard a person in the alley shout that a "Columbus Streeter" was nearby. Andrade, Garcia and Gomez ran toward the apartment complex. Ortiz saw Garcia quickly pull out a gun from underneath his sweatshirt. Almost immediately, Ortiz heard a barrage of gunshots fired from two different guns. He did not see the actual shooting.

At trial Serrano denied seeing the shooters. Testifying after Serrano, Maria Gutierrez (Chairez's girlfriend and the mother of his child) explained she had overheard Serrano tell a friend that Clever and Big Boy, referring to Gomez and Garcia, had been the shooters and Happy and Kevin, referring to

---

[2]     Although our opinion stated Ortiz had noticed Andrade and Garcia were armed, in his opening brief Andrade indicates Ortiz actually identified Andrade and Gomez as carrying guns.

Andrade and Alvarenga, "had [also] been there." Brandon Binning testified that two days before the shooting Andrade had told him something "was going to go down" and "Columbus Street was going to see that Vincent Town was back."

The People's theory at trial was that each of the defendants was either a direct perpetrator of the crimes charged or aided and abetted those offenses. In addition to instructions on murder (CALCRIM No. 520), first degree premeditated murder (CALCRIM No. 521), attempted murder (CALCRIM No. 600), attempted premeditated murder (CALCRIM No. 601) and shooting at an inhabited dwelling (CALCRIM No. 965), the jury was instructed on direct aiding and abetting principles (CALCRIM Nos. 400, 401) and the natural and probable consequences doctrine (CALCRIM Nos. 402, 403). Under the natural and probable consequences doctrine, the jury was told, it could find any one of the defendants guilty of murder and/or attempted murder if he aided and abetted the target offenses of shooting at an inhabited dwelling and/or the uncharged target offense of assault with a firearm, and the natural and probable consequence of either target offense was murder or attempted murder.

The jury convicted Andrade, Gomez, Alvarenga and Garcia of first degree premeditated murder and all other charged offenses and found each of the special allegations true, including the section 12022.53, subdivision (d), firearm-use enhancement allegations as to the murder, attempted murder and shooting at an inhabited dwelling charges. Andrade was sentenced to an aggregate indeterminate state prison term of 160 years to life.

b. *Andrade's appeal*

On appeal we reversed Andrade's and his codefendants' convictions for first degree murder based on the Supreme Court's decision in *Chiu, supra,* 59 Cal.4th 155, decided after Andrade's trial, which held aiders and abettors may be convicted of first degree premeditated murder under direct aiding and abetting principles, but not under the natural and probable consequences doctrine. (*Id.* at pp. 158-159.)[3] We explained that, although the instructions arguably required the jury to find the individual who actually shot and killed Chairez possessed the requisite mental state of premeditation and deliberation for a first degree murder conviction, "without a clarification that the natural and probable consequences doctrine was limited to second degree murder, the instructions as a whole effectively permitted the jury to convict some or all of the defendants of first degree premeditated murder as an aider or abettor under that legally invalid theory."

We rejected the Attorney General's argument the *Chiu* error was harmless in light of the evidence at trial of planning and premeditation. We held, "Although the evidence is certainly sufficient to support a finding of premeditation and deliberation in this case, the prosecutor relied heavily on the natural and probable consequences doctrine at trial, telling the jury repeatedly during closing argument it need not find the defendants intended to commit a murder so long as it found murder was a natural, probable and foreseeable consequence of a different target offense. Nothing in this record demonstrates beyond a reasonable doubt that the jury based its verdict on the

---

[3]     We also reversed the convictions for discharge of a firearm with gross negligence as a lesser included offense of the charge of shooting at an inhabited dwelling.

6

legally valid direct aiding and abetting (or direct perpetrator) theory rather than the invalid natural and probable consequences doctrine." (Fn. omitted.)

We remanded the case, explaining the People had the election in accordance with *Chiu* of accepting a reduction of the murder conviction on count 1 to second degree murder, with all associated enhancements found true by the jury, or to retry the greater offense of first degree premeditated murder (along with the accompanying specially alleged enhancements) under a direct aiding and abetting theory.

### c. *Proceedings on remand*

On remand the People elected not to retry the first degree murder charge. Resentencing Andrade, the court imposed an indeterminate state prison sentence of 120 years to life.

### 2. *Andrade's Petition for Resentencing*

On November 18, 2020[4] Andrade, representing himself, filed a petition for resentencing pursuant to section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Andrade checked all the boxes on the printed form petition establishing eligibility for resentencing relief, including the boxes stating he had been convicted of first or second degree murder under the natural and probable consequences doctrine and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437).

---

[4] The petition has a file stamp dated December 9, 2020, which is the date of the superior court's order summarily denying the petition. The court's minute order states the petition was filed November 18, 2020.

The superior court summarily denied the petition on December 9, 2020 without appointing counsel, requesting briefing from the prosecutor or holding an evidentiary hearing. After a lengthy description of Andrade's trial drawn from our opinion in *People v. Gomez, supra,* B251303 and a discussion of the nature of the prima facie showing required for resentencing relief under section 1170.95, the court concluded there was "ample proof, beyond a reasonable doubt, that the jury could have convicted him of murder on a theory that he was either the direct killer or that he aided and abetted the killer. Petitioner was either a direct perpetrator in the killing, based on express or implied malice, as the jury found true that he *personally discharged a firearm resulting in great bodily injury or death,* within the meaning of Penal Code § 12022.53(d), or that he aided and abetted the killer. Again, this court acting as independent factfinder, determines that based on the evidence presented, there is proof beyond a reasonable doubt that each element of second-degree murder under current law establishes petitioner's ineligibility for relief under the statute (Penal Code § 1170.95), because Petitioner could have been convicted of murder, under either an express or implied malice theory as the direct killer [or] as an aider and abettor."

Andrade filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843

8

(*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e)(3); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), requires the court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (See *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment

9

regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause. . . .  However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Id.* at pp. 970-971, internal quotation marks omitted; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675, review granted Feb. 24, 2021, S266336 [any error in denying petition at prima facie stage without appointing counsel is harmless if the record of conviction "conclusively demonstrates" petitioner is ineligible for relief].)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1).)  At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3); *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230, review granted Mar. 10, 2021, S266652; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309.)  The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (See *Gentile, supra,* 10 Cal.5th at pp. 853-854.)

2.  *The Superior Court Failed To Appoint Counsel as Required and Improperly Engaged in Factfinding Before Issuing an Order To Show Cause; Its Errors Were Not Harmless*

In *People v. Lewis, supra*, 11 Cal.5th 952, decided several months after the superior court's order denying Andrade's petition, the Supreme Court held, once a petitioner files a facially sufficient petition requesting counsel, the superior court must appoint counsel before performing any prima facie review under section 1170.95, subdivision (c).  Because Andrade checked all the necessary boxes on his form petition, the superior court erred by denying his petition without first appointing counsel.

The *Lewis* Court also held a superior court's failure to appoint counsel to represent a petitioner when assessing whether he or she has made a prima facie showing of entitlement to relief pursuant to section 1170.95, subdivision (c), is subject to harmless error analysis.  (*Lewis, supra*, 11 Cal.5th at pp. 957-958, 973-974.)  That is, reversal is not required notwithstanding the failure to appoint counsel if a review of the record of conviction indisputably establishes the petitioner is ineligible for relief.  Here, however, because Andrade's eligibility for resentencing cannot be determined without an evaluation of the evidence and additional factfinding, the harmless error doctrine is inapplicable.

As discussed, this court held the trial record did not establish beyond a reasonable doubt that Andrade had been convicted of first degree murder on a legally valid theory (as the shooter acting with express malice and premeditation or as a direct aider and abettor of such a shooter) rather than as an aider and abettor of the target offense of shooting at an inhabited dwelling under the natural and probable consequences theory

11

invalidated in *Chiu*. That holding necessarily established Andrade's prima facie eligibility for resentencing under section 1170.95—that is, the record of conviction does not conclusively establish Andrade is ineligible for relief. (See *Lewis*, *supra*, 11 Cal.5th at pp. 970-971.) Accordingly, Andrade is entitled to an evidentiary hearing pursuant to section 1170.95, subdivision (d), to determine whether the court should vacate his murder conviction and resentence him on the remaining counts (which would include attempted murder and two counts of shooting at an inhabited dwelling).

The superior court, although quoting this court's decision in *People v. Rodriguez, supra*, 58 Cal.App.5th 227, review granted, which discussed the nature of the People's burden of proof at the evidentiary hearing following issuance of an order to show cause, apparently misunderstood the stage of the process at which it properly acts as an independent fact finder to determine whether a petitioner should be resentenced under section 1170.95. As the Attorney General concedes, the superior court's factfinding in this case was premature. (See *Lewis*, *supra*, 11 Cal.5th at p. 971.)

The superior court also misunderstood the significance of the jury's verdict finding true the section 12022.53, subdivision (d), firearm-use enhancement allegation associated with the murder count. To be sure, that finding means the jury found Andrade had personally and intentionally discharged a firearm, proximately causing death or great bodily injury. However, it does not necessarily encompass a finding of actual malice. In light of the instructions and the prosecutor's closing argument, the jury may have convicted Andrade of murder and found true the related section 12022.53, subdivision (d), firearm-use enhancement based on his participation in the target crime of

shooting at an inhabited dwelling and its conclusion Chairez's death was the natural and probable consequence of that act.  (See *People v. Offley* (2020) 48 Cal.App.5th 588, 598-599 ["[b]ecause an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought"].)  As we held in Andrade's direct appeal, nothing in the trial record warrants a contrary conclusion beyond a reasonable doubt, let alone as a matter of law, the standard required to deny a section 1170.95 petition without first issuing an order to show cause and conducting an evidentiary hearing.

## DISPOSITION

The order denying Andrade's section 1170.95 petition is reversed.  On remand the superior court is to appoint counsel for Andrade, issue an order to show cause and conduct further proceedings in accordance with section 1170.95, subdivision (d).


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

13